United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Welcome to the Ninth Circuit. I'm pleased to be joined by my colleagues Judge Tallman and Judge Forrest. We want to welcome counsel who will be arguing virtually and in person today. We just ask that during argument you watch your time and start to sum up as time is expiring. Let us know if you want to reserve any time for rebuttal. We're ready to proceed with the oral argument calendar today. We have three cases that have been submitted. Midtie v. Garland, case number 18-70000. Castro Donato v. Garland, case number 18-71626. And Rivas v. Garland, case number 18-72421. We'll move to the first case set for argument today. Tabayoyon v. Kijakazi. And that is set for 15 minutes per side. And we'll hear first from Mr. Tree. Yes, Your Honors. Thank you very much. I appreciate the opportunity to be here before you today and to represent Ms. Tabayoyon. As a young child, Tabayoyon was sexually and physically abused for several years by her stepfather. As a teenager, she attempted suicide several times. She was in abusive relationships and again attempted suicide as an adult. She has flashbacks of sexual abuse. The record demonstrates something very remarkable about Tabayoyon. Despite this significant abuse, she developed a love for work and helping others. She started working at age 17, worked for nearly 20 years, including four years as a Navy in the Navy, receiving an honorable discharge. She worked for a significant time caring for others as a nurse. She loved that work. Before her impairments, she worked throughout her life except for brief periods when she had went through four surgeries due to service-connected injuries. And they kept her working momentarily, but each time she went back to work. The record consistently displays a woman in grief because she's no longer able to mother and nurse like she had before. She's told her doctors on many occasions that she pled with them to help get her better because she wants to be able to work. Counsel, can I ask about the, obviously we're well aware the plaintiff has a very sympathetic story. I don't think anyone's disputing that there's actually multiple disabilities at issue here. I think the question in my mind is we have an ALJ opinion that gave 10 reasons why her disability might not be as restrictive as she said it was. It seems like the district court thought some of those reasons were not good reasons for disallowing it. What do we do on appeal? Say we're left with those 10 reasons and we say, hey, two or three of these reasons seem justifiable by the ALJ but the others are not. Is that enough for us to rule in favor of your client or do we have to say that the ALJ was wrong on every point? I believe it's clear in the law that a few good reasons by an ALJ is not enough that harmless error would still apply if they're consequential to disability. Interestingly enough, the harmless error rule is not a creature of statute by Congress. It was a judicial decision. The Supreme Court ruled that it was appropriate to consider harmless error in administrative law cases, administrative cases. Counsel, is it harmless error or significant evidence? It seems to me that Judge Nelson's question is would one of the factors, if we find it to be a legitimate basis for discrediting or finding her not disabled, would that be significant evidence? Isn't that the issue? Substantial evidence? No, because the statute says that the decision from an ALJ must be supported by substantial evidence and must be free of legal error. My hypothetical asks whether or not one of those ten factors, if credited and found to be clear and convincing, would that be sufficient under the law to support the ALJ's determination? Or do you have to show that all ten of the factors or reasons that the ALJ cited are not worthy of belief? No, we don't need to show all ten. You could show just one of them, particularly if it's consequential to disability. Now, the case law is pretty well established in this area, but I will agree that the Ninth Circuit hasn't taken this harmless error doctrine and put it in a succinct one case. It's spread through many cases. For example, in McLeod, the Ninth Circuit said remand is only inappropriate where harmlessness is clear and not a borderline question. In Marsh, this court said the more serious the ALJ's errors, the more difficult it should be to show the error was harmless. That sort of begs the question. I mean, the question is substantial evidence. And it seems to me that a subset of that question is whether or not there was harmless error in connection with citing the other nine or whatever the number of factors are that are not sufficient to support. But if we find that there is one, can that standing alone be sufficient to uphold the ALJ's determination? Not in this case, under these facts, I don't believe so. There may be a hypothetical case where there were several minor errors made. And that's what the court said in Batson and Carmichael, where the court makes several minor inconsequential errors and just comes up with one error, one place where they erred. Then they found it was harmless. But Batson, that was the first case the Ninth Circuit had ever done that. Before that, they had never found that. Does it matter whether they're legal errors or factual errors? For example, a couple of these seem to rest upon which legal standard applies. If we found that that was incorrect, is that different than we just have some questions about the ALJ's weighing of the evidence, which seems to be more factual in nature? Yes. In Treviso, this court said that the use of the wrong legal standard alone constituted reversible legal error. So I do think there is a difference. If it's legal error, that by itself constitutes… Which of these, do any of these in your view constitute reversible legal error as opposed to factual weighing? Yes. The issue about what standard the second ALJ used, the most current ALJ used in evaluating the medical opinions. The federal court said that he erred as a matter of law because he used the wrong legal standard. He used the one for the new standard for cases that were filed after 2017. Your court has recently issued an opinion saying there's a pretty big difference between the standards after 2017 and before. And this ALJ said persuasiveness was the standard he used. Well, that's the standard under the regulations adopted in 2017. But this case was filed prior to 2017, and the standard is the treating physician rule as enunciated in Lester and Garrison and so many other cases before the Ninth Circuit. And that alone should compel this ability that the ALJ used the wrong standard in evaluating medical opinions. But we're still talking about the same doctor, are we not? Dr. Rowe, if I'm pronouncing that correctly. She's the treating physician? Yes. So then we're back to the same question with regard to the 10 additional factors that the second ALJ added to the original evaluation by the first ALJ. Yeah, I mean, there's a whole list of them that the federal court found were in error. For example, the ALJ said Dr. Rowe didn't perform a tender point exam for fibromyalgia. Clearly, he did. It's in his records. And he says, I did perform a tender point exam, and I found she had more than 11 out of 18. To me, that's significant enough. And I think under the facts of this case to compel disability in and of itself, because in the ALJ's mind, he was thinking that, hey, this doctor doesn't give good opinions because he didn't do a test. The only test really that you can determine fibromyalgia on. And he didn't see the rheumatologist opinion chart notes. Well, there's another error because in the chart notes, it says that they received a referral from Dr. Rowe and that they were sending the case back to Dr. Rowe for treatment of fibromyalgia after the rheumatologist had made the affirmative diagnosis. Dr. Rowe independently gave tender point exams. All of this was in error in the ALJ's decisions. Very significant. What do we do with the second ALJ's conclusion that Dr. I don't even know how to pronounce it, Drangui, in his December 8, 2017, consultative evaluation. Excuse me. I guess it was December 8. Yeah, December 8, 2017, noted four inconsistencies that, in my mind, establish malingering behavior. Doesn't that change the analysis significantly? No, I don't think it does. First of all, take a look at Dr. Dranguis' first consultative exam. He's Social Security's consultative examiner. He does two exams. He does the first one and he says in the first one, he affirmatively says there are no inconsistencies in this exam. In the second one, he did note that there was four inconsistencies, but they're very minor. Please note that he says, I observed her when she was in the waiting room. He is a tough consultative examiner. I give him. I'm not saying he's biased. Don't get me wrong, but he's tough. He looks at the people as they walk from their car through the parking lot. He looks at them when they're sitting in the waiting room, and he said in the waiting room, she didn't use her arms for support to get up. Then he said in the examining room, he told her to cross her arms above her chest and then to stand up. And she couldn't. Now, it doesn't indicate if she had in the waiting room, if she had her hands on her thighs and were helping herself up. He's silent to the subject. So it's a big to do about nothing. The control points. But then he's got three other observations. When walking into the exam room, her gait was moderately antalgic, favoring her left leg. But during formal testing, her gait was markedly antalgic, favoring her left leg. And then third, during the tender point testing, it was impossible to find a negative control point. And plaintiff even exhibited a marked pain response when pushing on the center of her forehead. And four, during formal range of motion testing, plaintiff could not flex her left hip greater than 45 degrees. But in the waiting room and during the interview, she sat with her left hip flexed to 90 degrees without complaint. That's pretty specific, is it not? Yeah, but they're not very compelling. None of them are because what's the difference between a moderate analytic gait and a marked one? I mean, there's not much difference. They're both abnormal. Counsel, the question is whether or not that is a specific contradictory point that could support the ALJ's conclusion that she may have been malingering. No, he never found she was malingering. The ALJ never found it. The doctor never found it. He only said she was cooperative. The first report she said there was no inconsistencies. The second report said there was a few inconsistencies. And the doctor didn't say it was malingering. He said, this makes it harder for me to give functional limitations. Then he turns to the question with regard to unemployment benefits where she basically has to hold herself out to the state of Washington as being ready, able, and willing to work, which one could say is inconsistent with her claim to the Social Security Administration that she's totally disabled and can't work. Well, first of all, Social Security says that's not correct. Their chief administrative law judge issued a memorandum that says that's not right. It's not inconsistent, unemployment and disability. The reason why is that unemployment, if you can work part-time, you can draw unemployment. Whereas with Social Security disability, if you work full-time, then that's the only way you can draw disability. If you can't work full-time, if you can work part-time, you're eligible for disability. So there's no inconsistency. Didn't she basically say at the hearing when she was confronted with that fact that, hey, we didn't have any other income and I had to support my family, which one could interpret to mean I'm willing to do or say anything in order to get benefits. No, because the federal court ruled, and I know this is a Geneva review, but the federal court ruled, and I think this is well supported in their record, that there was no evidence that she ever said she could work full-time. Because Washington state allows unemployment if you can work part-time. And there's no evidence in this record. The question is whether or not all of that evidence viewed together, cumulatively, would be substantial enough to support the ALJ's determination that she was not disabled. No, and the answer comes from Stout. Stout says we don't look to see in isolation if there's something left. What we do is then we have to go and use the reasonable ALJ standard. Would any reasonable ALJ, when crediting the improperly rejected evidence, be able to come up with a different disability determination? I can unequivocally say that they would. There's many ALJs on this record that would grant benefits. There are treating physicians. There's the VA, which was a treating source. They all supported disability. In fact, Dr. Drangis' both of his opinions, when he found she was totally consistent and the one where she found some inconsistencies, both of those support disability because he said she could only occasionally reach. And the vocational expert said there's no job she could do if, based on the ALJ's RFC, if you add in she can only occasionally reach. None, zero. Okay, counsel, we'll give you some time for rebuttal, and then we'll hear from the government now. Thank you. Good morning. Catherine Watson for the commissioner. Turning quickly to the standard of review, as we've discussed, the standard is substantial evidence. So, for example, in Carmichael, case law makes clear that so long as the decision remains or the finding remains unsupported by substantial evidence, an error is going to be harmless. So, okay, I agree with you. What I'm not worried about, but my question is, I guess, really, what do you do if there's ten of these reasons that support it and some number don't support it, two, four, six, eight, whatever number it is that don't support it, if you're left with one or two, is that substantial evidence on its own, or do we still have to go in and say, well, eight of these are no longer good, but we have to determine whether that is harmless in rejecting those eight? If you're left with one or two, the question that remains is, are those one and two, standing alone or standing together, do they constitute substantial evidence? Are they more than a mere scintilla? So if they're so minor, they just say, well, that's the test. If that's the test, then why do we ever even start talking about harmlessness? And the district courts seem to talk about harmlessness. That is the harmless error question. In other words, it remains supported by substantial evidence, then the error is harmless. If the remaining reasons are not substantial evidence, then we have a harmful error. So a harmful error would have to be, once we consider all of these that we say don't stand up and support substantial evidence, are we left with more than a mere scintilla of evidence? And if so, then it's harmless. So the harmlessness, in your view, is just sort of a placeholder for the scintilla of the evidence standard. Correct. In other words, you wouldn't credit as true unless you found harmful error. Okay. But if it's harmless, you don't credit as true. So if the remaining reasons are substantial evidence, Jennifer— It's just odd. It's odd to talk about harmlessness in that way. And I don't think I've seen that, like, for example, in the immigration law context where we're reviewing the BIA. I don't think I've seen this discussion come up in the harmlessness context. We've always stuck to is it more than a scintilla of evidence, and that's what I think is odd about this discussion of harmlessness in the Social Security. Is there a reason in your mind that we've discussed those differently? To be honest, I'm not versed in immigration, so I can't speak to the differences. My understanding is that is the question. Does substantial evidence still support the decision? So if you have errors but the remaining ones that you're saying are valid, are legally valid, then you ask, does the decision remain supported by substantial evidence? And that you have in Batson, also Carmichael. I believe Carmichael says an error is harmless so long as the ultimate credibility determination is supported by substantial evidence. What do we do with the MacLeod case that says that harmlessness requires the record to still be clear and not borderline? I mean, borderline seems very different than the scintilla of the evidence standard. And, you know, if we look at this and say, hey, look, only four of the ten are supported, why wouldn't we say that seems borderline, and so under MacLeod we'd send this back for the ALJ to say, look, six of these we don't think support substantial evidence, so we want you to redo your analysis using just these four. Would you come to the same conclusion? That's a good question. I wish I was more versed in the facts in the MacLeod case, but my understanding of case law consistently from Batson to Carmichael is essentially so long as the decision remains supported by substantial evidence, you have harmless error. And so, I mean, the only way that I can reconcile it without knowing the details of where I Is it clear from those remaining reasons that you have still more than a mere scintilla of evidence? The way you're stating it has always been my understanding, but it did seem like there were some cases here that made me question whether we've applied something different in the Social Security context. Let me ask you about malingering. Was there evidence of malingering in this case, or do you have to have a finding? It seems like there was evidence, but perhaps, as counsel said, there wasn't an actual finding, per se. What do we do with that? There wasn't an actual finding of malingering. Case law is divided on this. The most recent case law I believe is Carmichael, which indicates a finding of malingering is not required. But regardless of whether this court doesn't need to reach that issue, because even if you say there's simply symptom exaggeration, which the ALJ did explicitly find, I believe the ALJ's exact words were, multiple inconsistencies that raise concern about the veracity of the claimant's complaints. There's plenty of case law indicating that symptom exaggeration or multiple inconsistencies is going to be sufficient standing alone to discount the claimant's allegations. Fair v. Bowen is one. I think Thomas is another one. And here, as noted, we do have an examining physician who observed inconsistencies, essentially between how the claimant's tabayayan behaved in the waiting room versus how she behaved during formal testing or during the examination. And the examining physician found those inconsistencies significant enough to note before he made an assessment in 2017 that it was difficult for him to fully respond to this question. It was difficult for him to assess her functioning accurately because of these inconsistencies. So that was one valid reason, standing alone, that the ALJ determined undermined tabayayan's subjective complaints. The ALJ also noted other inconsistencies. For example, tabayayan said she needed a cane. That's on CAR 306. Throughout the record, physicians observed that she did not use an assistive device. In fact, just after the relevant period, she informed the VA that she did not use an assistive device as her normal mode of transportation. So again, a discrepancy between what she's telling the agency and then what she's telling her doctors. She also indicated... Can I ask a question about fibromyalgia specifically? It seems like fibromyalgia is largely diagnosed based on self-reported restrictions. Does that place this disability due to fibromyalgia in a different category than other disabilities vis-a-vis our consideration of self-reported symptoms? Right. It changes the analysis in the sense that certain objective evidence, at least in relation to fibromyalgia, would not be relevant. I'll just quickly note here, it would be relevant for her other disorders. Knee degenerative disc disease, hip degenerative disc disease, things like strength testing, that would be relevant. The ALJ is not only permitted but required to consider the objective evidence with respect to impairments, including those. With fibromyalgia, it changes what objective evidence is. Yes, REVILS, and also in our Social Security rulings, indicates that it's diagnosed entirely on the basis of the claimant's objective complaints. Things like range of mosing, there's no labs to confirm the diagnosis. However, those cases in our Social Security ruling indicates that things like tender point examinations, despite the fact that they rely entirely on the claimant saying this causes me pain, are considered objective evidence in the context of fibromyalgia. Also in 12.2p, the other way to diagnose is repeated manifestations of certain signs and symptoms, some of which Tabe-Yayan alleged. For example, she alleged thinking and memory problems. She alleged extreme fatigue, feeling tired. It was appropriate for the ALJ to look and note. For example, all of her mental status examinations showed no difficulty with memory. No difficulty performing complex tasks. That stands in contrast to her allegations of memory problems. The ALJ also noted, although she alleged... Are any of her disabilities related to memory problems, though? Depression, fibromyalgia, I would say, would both be related. And yes, fibromyalgia is expressly related. It's not always, but that is under 12.2p, under one of the diagnoses, there's a list of signs and symptoms that are commonly associated with fibromyalgia. Memory difficulties, brain fog, things of that nature are one of them. It is one that she alleged. So it would be valid to her disorders, whether it stems from depression or whether it stems from fibromyalgia. Are there any portions of the ALJ's adoption of the 2016 ALJ analysis that are appropriate? The only one that I noted was the 2013, Dr. Dranguis. I don't believe we defended any of the others for the reason that the district court found the others to be error below, so it violated law of the case. But Dr. Dranguis's 2013 opinion was not challenged. And also migraines as well was unchallenged. So it was appropriate for the ALJ to adopt those analyses because they went unchallenged or they weren't found to be in error originally. So the ALJ appropriately adopted them. And then the district court found that Tabayoyan waived her challenge to the ALJ's 6th, 7th, and 8th reasons for discounting her subjective testimony. Does the government argue that her challenge to those reasons are waived on appeal? I did not see that. So I'm wondering if the government waived the waiver argument. Yeah, the reason why I didn't is because certainly under law of the case, we have the same or a lower court, but here we're challenging to a higher court. So I believe it was given that she challenged them generally, she raised it again here, so we didn't get into that for that reason. Counsel, let me ask you about that. It seems to me that the scope of the remand here, as I read the district court's order, was to go back and do a redetermination of disability. I do not read that to mean that the ALJ was forbidden from looking at the underlying facts that were adduced in the record at the first merits hearing. Is that correct? That's correct. Go ahead. The district court did find specific errors. So errors with evaluating her subjective complaints. There was an error with evaluating Dr. Rue's opinion. Those were the two errors that I distinctly remember. So the ALJ was instructed to reevaluate that evidence. It doesn't mean that law of the case precludes the second ALJ from looking at the underlying facts from the record, does it? No, no. And also under Stacy, if a district court, even if the district court doesn't affirm but doesn't address, the ALJ is allowed to adopt and adopt. There's some indication should adopt the prior. In other words, you don't want to stray too far from the order. So there is certainly no error. And, in fact, probably it's certainly when it's affirmed, you are supposed to adopt it again. But even when it's silent upon it, there's no error in reiterating the prior rationale. But with respect to the evidence that the ALJ, that the district court below found error in, we are focusing on the additional reasons the ALJ provided. So just to put a finer point on the government's position here, there were 10 justifications by the ALJ. Barring us concluding that all 10 of those are invalid considerations, so even if we found one of those was valid, the government's position would be that's still substantial evidence. We would still need to affirm. The government's position is symptom exaggeration, inconsistencies. Any one of those is substantial evidence standing alone. For objective evidence, you would need that and one more because the ALJ can't reject solely based on objective evidence if it's not supported. If it's a direct conflict, you have an inconsistency. So it's our position that any direct conflict, and certainly Dr. Dranguis' evidence of symptom exaggeration, would constitute substantial evidence standing alone. And to the extent you can tell us, which of those would not be good enough standing alone? Is that the third and the fourth and the eighth reasons? Yeah, that's a good question because most of them are inconsistent. I believe there were some that were, for example, things like there was one that talked about normal strength, normal range of motion. That would really pertain to knee degenerative disc disease, hip degenerative disc disease. She specifically talked about the hip had some range of motion difficulties. I don't remember what number that was, but that would firmly fall into objective evidence. That standing alone would not be sufficient. The others, however, did seem to point to inconsistencies, contradictions in the record. For example, needed a cane, but yet record indicates did not use an assistive device. Unable to use hands or arms. So at least a few inconsistencies together would be substantial evidence. And we also have two opinions that I'd note here are essentially a reiteration of her subjective complaints. So this is a situation where we have almost language that effectively mirrors her subjective complaints. And so based on that, the ALJ noted that those opinions are, again, reiterating subjective complaints that the ALJ found unreliable, and therefore they were unreliable as well. And I see I'm out of time, so unless anybody has any other questions, I will respectfully ask this court to affirm. Thank you. We'll give two minutes for rebuttal. Thank you. One of the places where the ALJ said that he was rejecting a medical opinion because the doctor just parroted what Ms. Tabby Union said was her impairments was the physician's assistant from the Veterans Administration. But I'd like to make a point that I think is very important, that just because the doctor's medical opinion is the same as the patient's does not mean he heavily relied upon them. He could still very well rely on his clinical examination. For example, and this is affirmatively stated at 2071 in the record by P.A. Flagler, quote, the examination is medically consistent with the veteran's statements describing functional loss with repetitive use over time, close quote. Another matter I think is very important we haven't talked about too much is that the judge accepted that Ms. Tabby Union had a very significant somatoform pain disorder. By definition, a somatoform pain disorder is a pain disorder that is caused by psychological factors, stress and other things, and is in excess of what the objective medical evidence would find. So by definition, that does that. Now what cumulatively is a significant error is in the ALJ then when he went in and looked to reject the medical opinions in the record, he said, well, there's not enough objective evidence to support them. But he didn't consider, he didn't analyze the fibromyalgia and the somatoform pain disorder. That in and of itself should compel remand. He did the same thing with the activities of daily living where he said, well, her activities are in excess of what she said. But there was a straw man was developed because the ALJ admitted that she said, I have good days and bad days, my pain is variable and I can do, it depends on what I can do on certain days depending on that pain level. But when he went in and did the analysis, he said she claimed she was totally disabled and that's inconsistent. For he said, for example, but in one, but lifting one coin was inconsistent, both with Dr. Drangas who said she couldn't reach for one third of the day. That's two and two thirds hours. But he used a thing that only take a moment, a few seconds to discredit that. Okay. Thank you, counsel. You've used your additional rebuttal time. We thank both counsel for your arguments in this case. The case is now submitted.
judges: TALLMAN, NELSON, FORREST